UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

L. ANDREW BERNHEIM,

        Plaintiff,

     v.

                                       DECISION AND ORDER
                                         05-CV-118A

DAVID ELIA,
DANIEL ELIA,
ESTATE OF ALFRED ELIA,
THE ALFRED ELIA TRUST,
ESTATE OF JOSEPHINE ELIA,
BERNADETTE ELIA,
TINA ELIA,
JOHN DOES 1 through 50, and
JOHN DOES 51 through 100,

        Defendants.

_____

## INTRODUCTION

     Plaintiff L. Andrew Bernheim filed this action on February 23, 2005 against

defendants David Elia, Daniel Elia, the Estate of Alfred Elia, the Alfred Elia Trust,

the Estate of Josephine Elia, Bernadette Elia, Tina Elia, and John Does 1

through 100 (collectively, the defendants or "Elia defendants").  In his complaint,

Bernheim asserts that he is either part or sole owner of D.A. Elia Construction

Corp. ("Elia Construction") and that the defendants have wrongfully deprived him

of ownership profits and benefits.  David Elia is an officer of Elia Construction

and he purports to be the owner of Elia Construction.  It is not clear whether any

of the other defendants claim to have an ownership interest in Elia Construction.

Currently before the Court are objections to a report and recommendation of Hon. H. Kenneth Schroeder, Jr., wherein Magistrate Judge Schroeder recommended that defendants' motion to dismiss the complaint as untimely be denied, and that partial summary judgment be granted in favor of plaintiff on his claim that he is sole owner of Elia Construction.

For the reasons stated, this Court declines to adopt Magistrate Judge Schroeder's report and recommendation, finds that plaintiff's claim of sole ownership must be dismissed as a matter of law, and finds that plaintiff's remaining claims are all time-barred.

## **BACKGROUND**

The events giving rise to this dispute date back to 1987.  To fully appreciate the nature of the dispute and the relationship of the parties, a thorough recitation of the facts and related proceedings is necessary.

### A.    **New Jersey Bankruptcy Proceedings**

In 1982, Bernheim filed a Chapter 11 bankruptcy petition in United States Bankruptcy Court for the District of New Jersey.  Plaintiff's Chapter 11 plan was confirmed in 1985 and modified in October 1986.

After plaintiff's bankruptcy was confirmed, plaintiff purportedly engaged in a business transaction with the Elia defendants wherein he agreed to purchase a one-third interest in all of the outstanding stock of Elia Construction. That transaction occurred sometime around May 1987. Plaintiff asserts that the remaining two-thirds ownership interest was held by defendants Daniel Elia and David Elia, with each having a one-third interest. In 1987 or 1988, Daniel Elia sold his one-third share back to the corporation, which according to Bernheim then made him a one-half owner of the company, along with David Elia.

Sometime around 1990, a dispute arose between Bernheim and the Elia defendants regarding Bernheim's ownership interest in Elia Construction. Bernheim brought an adversary proceeding in the New Jersey bankruptcy court to resolve the dispute. See Bernheim v. D.A. Elia Constr. Corp., Dkt. No. 90-03356 (Bankr. D.N.J. 1990). ("New Jersey Adversary Proceeding"). In that action, Bernheim alleged ownership of Elia Construction, wrongful deprivation of ownership profits and benefits, diversion of corporate assets, false arrest and malicious prosecution. (See Compl., Dkt. No. 1, at ¶ 15).

In 1994, the New Jersey Adversary Proceeding was administratively closed. It is not clear from the record why the matter was administratively closed. The Elia defendants assert that it was closed because Bernheim failed to prosecute. Bernheim asserts that it was closed because of a clerical error. In any event, Bernheim moved to reinstate the proceeding in December 1997, and

in  February 1998, the case was reopened.  Litigation in that case proceeded

without resolution until sometime in 1999, when the parties attempted to settle

that dispute.  As part of the settlement, the parties entered into a Stipulation and

Order and a Confidential Settlement Agreement.  The Stipulation and Order,

entered on June 5, 2000, stipulated that, subject to the terms of the Confidential

Settlement Agreement, plaintiff was the "sole owner" of Elia Construction from

1987 through 1999.  The relevant language of that stipulation provides as follows:

> Bernheim filed a complaint against Elias, as well as against [Elia]
> Construction Corp. on or about September 1990.  In that suit,
> Bernheim alleged that he was the true owner of Construction Corp.
> *Subject to the Confidential Settlement Agreement entered into by*
> *Bernheim, the Elias and Construction Corp., Bernheim was the sole*
> *owner of Construction Corp. for the years 1987 through 1999,*
> *inclusive.*

(See Dkt. No. 46-3, Exh. A (June 5, 2000 Stipulation and Order)(emphasis

added)).  The stipulation further provided that "the Elias will not settle their

litigation with Bernheim concerning ownership of [Elia] Construction Corp. unless

[the New Jersey Bankruptcy Court first] determines the tax liability of the Elias for

the years 1987 through and including 1999," and that, since Bernheim was the

sole owner of Elia Construction during that period, the Elia defendants owed no

taxes for profits to Elia Construction during that time.  The Stipulation and Order

was signed by Hon. William H. Gindin, the bankruptcy judge presiding over the

New Jersey Adversary Proceeding.

As part of the settlement, the parties also entered into a Confidential Settlement Agreement.  Under the terms of that Confidential Settlement Agreement (which is no longer confidential because it was filed with this Court as part of these proceedings), the Elias agreed to pay Bernheim a sum of $48,500, along with an additional sum to be determined in binding arbitration.  In exchange, Bernheim agreed to resell all of his ownership interest in Elia Construction back to the Elias.  Like the June 5, 2000 Stipulation and Order, the Confidential Settlement Agreement recited the anticipated tax treatment as to Bernheim and the Elias flowing from this resolution.  More specifically, the agreement provided that the Elias would personally keep any tax refunds from the IRS and New York State, but that the Elias would pay Bernheim any tax savings received from the IRS and New York State by reason of his sole ownership for the time period in question.  Finally, the agreement provided that it would be binding upon the wiring of $48,500 to Bernheim by 5 p.m. on October 24, 2000, and that time was of the essence.  (See Confidential Settlement Agreement, Dkt. No. 46-3, Exh. B).

Based upon the June 5, 2000 Stipulation and Order and the Confidential Settlement Agreement, Bankruptcy Judge Gindin entered orders dated June 15, 2000, and June 21, 2000, directing the New York State Department of Finance and Taxation and the Internal Revenue Service (IRS) to return tax payments made by the Elia defendants on behalf of Elia Construction from 1987 through

1999.  (See June 15, 2000 and June 21, 2000 Orders of Hon. William H. Gindin, Dkt. No. 46-3, Exh. C (filed as Dkt. Nos. 203 and 204 in Bernheim v. Elia Constr. Corp., No. 90-03356)).

Not surprisingly, the IRS appealed Judge Gindin's June 15th and June 21st orders.  On December 14, 2000, Hon. Anne E. Thompson, United States District Court Judge for the District of New Jersey, issued an order vacating those orders and remanded the matter for further proceedings.  (See December 14, 2000 Order of Hon. Anne E. Thompson, Dkt. No. 46-3, Exh. D (filed in I.R.S. v. D.A. Elia Constr. Corp., et al., 00-3394 (D.N.J.)).  Judge Thompson stated that she was unable to understand the support for and effect of the June 15th and June 21st bankruptcy court orders.

Upon remand, the matter was reassigned to United States Bankruptcy Judge Raymond T. Lyons, Jr.  The parties then attempted to persuade Judge Lyons to approve of their settlement agreement and related tax determinations. Judge Lyons refused and ultimately dismissed the entire adversary proceeding for lack of subject matter jurisdiction.[1]  Judge Lyons' oral ruling provides insight into the dealings of the parties in bankruptcy court and therefore, his ruling is quoted extensively as follows:

---

[1]  Defendants erroneously state that the New Jersey Adversary Proceeding was dismissed for lack of personal jurisdiction. (See,e.g. Dkt. No. 41-8, at 6).  This is incorrect. Judge Lyons made clear that he was dismissing the New Jersey Adversary Proceeding for lack of subject matter jurisdiction.

[F]ollowing his exit from bankruptcy in 1985 Mr. Bernheim engaged in some transactions with the Elia Construction Company and members of the Elia family who were principals in that construction company. And apparently Mr. Bernheim was asked to invest in the Elia Construction Company and he did in fact put up substantial sums of money. I think that one of his advances was in the neighborhood of $150,000 and there may have been another advance so that he put into the Elia Company over $200,000. But these transactions occurred at the earliest in 1987. And there is a discrepancy in the understanding of the parties which apparently was never reduced to writing as to exactly what Mr. Bernheim was to get for his investment in this company and whether it was a loan or an equity investment, and if an equity investment, what ownership interest he would have. . . .

[And then] there was a later transaction where Mr. Bernheim needed some cash. Apparently he was incarcerated somewhere and in order to get out, to post bail, I think he had to come up with some cash and he prevailed upon the Elias to provide that cash to him. Again the exact details are disputed, but generally a transaction similar to that happened.

And thereafter, say the Elias, there was an agreement that if Bernheim did not repay the money that had been advanced for his criminal law problems, that he would transfer his stock interest back to the company for a relatively modest additional payment, somewhere in the area of $50,000. So the Elias take the position that Bernheim no longer has the right to any stock interest in the corporation and Bernheim says, I'm still a stockholder and I'm entitled to my share of the corporation.

As I said, those transactions started in 1987 and when the dispute arose, Mr. Bernheim came to this court and filed a complaint against the Elias in 1990.

. . .

The case seemed to make no further progress towards trial until December of 1999 when Bernheim and the Elias announced that they had reached a resolution and they filed a settlement document, which I haven't seen. Apparently it's supposedly filed under seal somewhere so the exact terms of the settlement are not known to

me at this time.

However, part of the settlement was conditioned upon the Bankruptcy Court making certain tax determinations. I would note that the United States of America and the State of New Jersey were not parties to the adversary proceeding. That settlement appears to be the product of someone's genius idea that Bernheim could get money without Elia having to come out of pocket. And Elia could get rid of Bernheim's claim to an ownership interest in their company without having to pay anything at the end of the day.

And the ingenious idea was, well, the Elia Construction Company itself was in bankruptcy in New York State and had essentially ceased operations, was collecting its receivables and distributing that money to its creditors and apparently there would be money left over for the shareholders to resume operations as a construction company. And that money was achieved through the settlement of a fairly large construction dispute.

A few million dollars came in. There were no expenses to be paid because the company had ceased operations. So apparently this subchapter S company had taxable income to report and pass through to its shareholders, who at the time were thought to be members of the Elia family.

But the genius idea was let's make Andy Bernheim a shareholder in those years where we had this pass through income. Andy Bernheim has paid millions of dollars in professional fees and his bankruptcy case. He's got losses that will offset that income. So if we shift the income to him on paper there will be no tax due and we, the Elia's, [sic] can seek a refund of the taxes that were paid, although I'm not even sure I know that the Elias's [sic] paid taxes. I'm assuming that they did.

.   .   .

By structuring the transaction in this way and deeming Mr. Bernheim to be a shareholder in past years, the hope is that Elia could recapture from the government the money that they've promised to pay to Bernheim. . . .

The net result, it seems to me, of this scheme is that the Elias are

using the government's money to buy a release from Bernheim and
that the loser here is the government if the transaction is approved
as structured with the tax consequences being determined.

(See Tr. of Oral Decision of Bankruptcy Judge Lyons, at 48-52, filed as Dkt. No.

282 in Bernheim v. Elia, No. 90-3356 (Bankr. D.N.J.)).  Judge Lyons then found

that the arrangement was procedurally defective because the parties were

seeking to determine tax consequences without input from the taxing authorities

who were not parties to the lawsuit.  Id. at 53.  Judge Lyons denied the motion to

approve the settlement, and then found that the bankruptcy court lacked

jurisdiction over the entire adversary proceeding because, at the time the

adversary proceeding was filed in 1990, Bernheim's bankruptcy was over.  Judge

Lyons stated:

I'm going to grant the Elia's [sic] motion to dismiss the adversary
proceeding for lack of jurisdiction. I think that jurisdiction can be
raised anytime. Subject matter jurisdiction can be raised anytime.
Subject matter jurisdiction can even be raised by the court *sua
sponte* if the parties have not raised it. The parties cannot confer
jurisdiction on the court where it does not exist.

And I determine . . . that the cause of action by Andrew Bernheim
against Elia is not related to his bankruptcy case.
. . .

The cause of action here does not belong to the bankruptcy estate or
to the liquidating trustee.  It belongs solely to the debtor and is based
solely on post confirmation transactions.  It was not an asset of the
debtor at the time he filed for bankruptcy. It was not an asset of the
debtor at the time of his plan was confirmed. And it never became an
asset of the estate in administration. Therefore I hold that this Court

does not have jurisdiction over the complaint under 28 USC 1334.

Id. at 62-63.

Judge Lyons issued his order denying the motion to approve the settlement and dismissing the case on April 9, 2001. Bernheim moved to reconsider that order, but his motion to reconsider was denied May 25, 2001. It does not appear that any party appealed Judge Lyons' ruling to the New Jersey District Court.

**B.     Elia Chapter 11 Proceeding in Western District of New York**

In the meantime, after the New Jersey Adversary Proceeding was filed, Elia Construction initiated its own Chapter 11 bankruptcy proceeding on March 30, 1994 in the Western District of New York ("Elia Chapter 11"). The Elia Chapter 11 was a massive bankruptcy that took almost 10 years to resolve. In the midst of those proceedings, the New Jersey Adversary Proceeding between Bernheim and the Elias came to the attention of Hon. Michael J. Kaplan, the United States Bankruptcy Judge overseeing the Elia Chapter 11. On June 4, 1998, Judge Kaplan lifted the bankruptcy stay so as to permit the New Jersey Adversary Proceeding to continue in that forum. (See Dkt. No. 333 in In re Elia Constr. Corp., No. 94-10866-MK (Bankr. W.D.N.Y.)).[2]

---

[2]  The docket reflects the following order by Judge Kaplan:

It is further ORDERED that this Court will abstain from hearing the Debtor's objection to claim #1 of Bernheim, in favor of a resolution of related matters in the Bankruptcy Court for the District of New Jersey; and it is ORDERED that to

**C.    Adversary Proceeding in the Western District of New York**

In February 23, 2005, Bernheim filed the instant proceeding in the Western District of New York seeking a declaratory judgment that he is the sole owner of Elia Construction Corp. (Count 1), or alternatively, that he is fifty percent owner (Count 2).  The complaint asserts additional causes of action including conversion of profits due him as owner (Count 3); imposition of a constructive trust (Count 4); breach of fiduciary duty (Count 5); fraud (Count 6); conspiracy (Count 7); aiding and abetting (Count 8); injunctive relief (Count 9); and accounting of all monies distributed by Elia Construction (Count 10).  Bernheim named all of the Elia defendants, individually, but did not name Elia Construction as a defendant.

The Elia defendants moved to dismiss the action asserting, *inter alia*, that Bernheim's claims were time-barred.  Bernheim opposed the motion to dismiss and asserted that defendants were estopped from denying his ownership in Elia Construction Corp. by virtue of their June 5, 2000 stipulation.

On June 10, 2006, Hon. John T. Elfvin, to whom the matter had been assigned, issued a Decision and Order dismissing Bernheim's claims without prejudice.  Judge Elfvin found:

---

the extent that lift of the automatic stay is necessary in order to have a full adjudication with respect to claims of ownership in the Debtor-corporation, the stay is lifted; and it is ORDERED that the automatic stay is not lifted as to any matters that would impact assets of the Debtor that would be available for distribution to non-insider creditors or administrative claimants.

The facts, in the light most favorable to plaintiff, are found as follows and are undisputed. Plaintiff filed a Chapter Eleven Bankruptcy Petition on October 6, 1982. In 1990, plaintiff commenced litigation in New Jersey Bankruptcy Court against Elia (the "New Jersey Litigation"). The claims in the New Jersey Litigation are essentially the same as those in this matter — viz., issues concerning ownership of Elia and benefits thereof. The New Jersey Litigation was dismissed on March 21, 2001 for lack of jurisdiction.

In 1994, Elia filed a Chapter Eleven Bankruptcy Petition in the Western District of New York Bankruptcy Court (hereafter the "Bankruptcy Proceeding" or the "Bankruptcy Court"). The Bankruptcy Proceeding was a Surplus 11 Bankruptcy, in which all the creditors were paid in full and the debtor corporation, Elia, has funds remaining in surplus (hereafter "Elia's Surplus"). Currently, the Bankruptcy Proceeding is still open pending the resolution of an appeal before Chief Judge Richard J. Arcara, 04-CV-0975A, of the Bankruptcy Court's October 19, 2004 Order approving Damon & Morey, LLP's Fee Applications (hereafter "Damon & Morey Matter"). Plaintiff has moved to intervene in the Damon & Morey Matter, on which motion a decision has not as yet been issued.

The size of Elia's Surplus is entirely contingent upon the resolution of the Damon & Morey Matter. Once the Damon & Morey Matter is resolved, Elia will have to file a Debtor-in-Possession Final Report and Account in Bankruptcy Court ("Final Report") and the Bankruptcy Proceeding will be closed. Only then will any of Elia's shareholders and/or owners — one of whom plaintiff claims to be — have a claim to Elia's Surplus.

Plaintiff makes various factual allegations in his Complaint, the relevant ones of which depend on the Final Report filed with the Bankruptcy Court. As such, all of plaintiff's claims except for that of declaratory judgment will not be ripe for adjudication until the Final Report is filed with the Bankruptcy Court. *See Battenfeld Soccer, Inc. v. Am. Indoor Soccer Ass'n*, 2002 U.S. Dist. LEXIS 13897, at *7 n.5 (W.D.N.Y. 2002) (Elfvin, J.) ("Where, as here, the claim of damages is contingent on the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed.") (citation and internal quotations Case 1:05-cv-00118-RJA-HKS Document 26

Filed 01/10/2006 Page 3 of 4 omitted); *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992) (finding that a bankruptcy order is considered to be final when "all of the issues pertaining to a discrete claim, including issues as to the proper relief," have been resolved). As plaintiff has moved to intervene in the Damon & Morey Matter and as the Bankruptcy Proceeding is still pending, the undersigned does not see how the interests of judicial economy or administrative efficiency will be served by determining the rights of the parties without being able to determine the benefits that may flow from those rights until matters pending before other courts are resolved. Therefore, the Court will dismiss plaintiff's claims without prejudice and allow plaintiff to refile his claims subsequent to a determination of the Damon & Morey Matter and the close of the Bankruptcy Proceeding.

(See Order of Hon. John T. Elfvin, Dkt. No. 26).

In the meantime, on June 19, 2006, this Court, in presiding over the Damon & Morey fee dispute matter, denied Bernheim's motion to intervene upon finding that the motion (which was filed on August 12, 2005, several months after that appeal had been argued, briefed and fully submitted to the undersigned) was untimely.  See In re D. A. Elia Constr. Corp. v. Damon and Morey, LLP, 04-cv-975A, Dkt. No. 21 (June 19, 2006 Order Denying Motion to Intervene).[3]

C.    **Remand from Second Circuit**

Bernheim appealed Judge Elfvin's dismissal order to the United States

---

[3]  That order was appealed to the United States Court of Appeals for the Second Circuit. The Second Circuit affirmed this Court's decision to deny intervention as untimely.  See In re D. A. Elia Constr. Corp. v. Damon and Morey, LLP, 04-cv-0975A, Dkt. No. 33 (Summary Order of Second Circuit).

Court of Appeals for the Second Circuit. On June 28, 2007, the Second Circuit issued a summary order finding that, in the interest of judicial economy and in order to avoid duplicative litigation, "Judge Elfvin acted well within his discretion when he dismissed Bernheim's claims without prejudice and allowed Bernheim's status as a shareholder to be resolved by the Court which first had occasion to consider it." (See Second Circuit Summary Order, Dkt. No. 35, at 2). However, as it was the clear that Bernheim's status as a shareholder would not be resolved in the context of the Elia Chapter 11 or in the context of the motion to intervene, the Circuit found that remand was proper. The Court determined that "because the threat of duplicative litigation no longer exists, and because the Western District of New York is the proper forum for adjudication of Bernheim's claims, we now vacate the District Court's dismissal of those claims and remand with the instruction that the District Court reinstate Bernheim's complaint." Id. at 3.

D.    **Proceedings after Remand**

Following remand from the Second Circuit, the case was reassigned to the undersigned, and subsequently referred to Magistrate Judge H. Kenneth Schroeder, Jr., for further proceedings.

The Elia defendants renewed their motion to dismiss, again asserting that Bernheim's claims were time-barred. Bernheim opposed that motion and filed a cross motion for partial summary judgment on his first count for declaratory

judgment that he is the sole owner of Elia Construction Corp. by virtue of the June 5, 2000 stipulation.

On March 26, 2009, Magistrate Judge Schroeder issued a report and recommendation recommending that the motion to dismiss plaintiff's claims as time-barred be denied and that plaintiff's cross motion for partial summary judgment be granted. Specifically, Magistrate Judge Schroeder found that Bernheim's declaratory judgment was not time barred because it arose from the June 5, 2000 Stipulation and Order, was in the nature of a contract action to which a six-year statute of limitations period applies, and was timely brought within that six-year period. The Magistrate Judge also found that, although many of Bernheim's other claims are untimely, the doctrine of equitable tolling should be applied. Finally, as to Bernheim's motion for partial summary judgment, the Magistrate Judge found that Bernheim was the sole owner of Elia Construction Corp. by virtue of the June 5, 2000 stipulation.

The Elia defendants filed objections to the report and recommendation arguing that the Magistrate Judge erred in finding that Bernheim's claims were not untimely, that the doctrine of equitable tolling should not apply, and that even if Bernheim's claims are timely, material issues of fact exist to preclude summary judgment on Bernheim's declaratory judgment claim.

Bernheim filed a limited objection to the report and recommendation stating that he disagreed with the Magistrate Judge's determination that some of his

claims are time-barred and that, even though the Magistrate Judge found those claims to be equitably tolled, the Magistrate Judge should have addressed whether equitable tolling applied to the period of time that Judge Gindin had deemed him to be incompetent.[4]

On September 10, 2009, this Court heard oral argument on the objections. During oral argument, the Court requested further briefing as to: (1) why the period between 2001 and 2005 should be equitably tolled; and (2) whether the parties are required to submit to binding arbitration in accordance with the terms of the October 24, 2000 Confidential Settlement Agreement. The parties timely filed their supplemental briefs, and the Court has considered the arguments raised therein.

## **DISCUSSION**

### 1. **Claim of Ownership based upon June 5, 2000 Stipulation and Order**

Putting aside the issue of timeliness for a moment, the Court finds that plaintiff's first cause of action must be dismissed as a matter of law.

Count 1 of the complaint seeks declaratory judgment that Bernheim is the sole owner of Elia Construction since 1987 by virtue of the June 5, 2000 Stipulation and Order and by virtue of the doctrine of judicial estoppel. In other

---

[4] Bernheim claims that Judge Gindin deemed him to be incompetent from September 1985 until November 1999. See Compl. at ¶ 12.

16

words, plaintiff claims that he is the sole owner of Elia Construction because the

Elia defendants admitted that to be the case in the June 5, 2000 Stipulation and

Order that was signed by Bankruptcy Judge Gindin.

Any admissions made in the June 5, 2000 Stipulation and Order do not

create a right of ownership, nor can they.  It is beyond dispute that the

admissions made in the June 5, 2000 stipulation were made only in the context of

attempting to settle the New Jersey Adversary Proceeding.  By its very terms, the

stipulation provides that the admission was being made "*[s]ubject to the*

*Confidential Settlement Agreement entered into by Bernheim, the Elias and [Elia]*

*Construction Corp*."  <u>See</u> June 5, 2000 Stipulation and Order at ¶ 1; <u>see also</u>

<u>Burgess Constr. Co. v. M. Morrin & Sons</u>, 526 F.2d 109, 113 (10th Cir. 1975)("The

words 'subject to' usually indicate a condition to one party's duty of performance

and not a promise by the other.").  When the settlement was breached,[5]

Bernheim could have brought a motion to enforce its terms.  For whatever

reason, he chose not to do that.  Instead, brought this proceeding seeking to

have the statements made by the Elias in the context of negotiating that

settlement declared dispositive of his claim of ownership.  That he cannot do.

Under Fed. R. Evid. 408, those statements would not even be admissible at trial

---

[5]  Bernheim asserts that the settlement fell apart because the Elia defendants failed to perform under the Confidential Settlement Agreement.  The Elia defendants dispute that claim and have provided evidence indicating that they did perform by paying Bernheim $48,5000 on October 24, 2000, as required.  For the purposes of this Court's ruling, the Court will assume the facts are as plaintiff contends.

to prove Bernheim's ownership, let alone dispositive of his claim.  Because the admission of sole ownership was conditioned upon (i.e. "subject to") Bernheim's agreement to release all claims in accordance with the terms of the Confidential Settlement Agreement, it cannot be divorced from that Settlement Agreement and deemed an admission of liability.  In other words, the Stipulation and Order has no meaning independent of the Settlement Agreement. If (as Bernheim claims) the settlement failed, then the admission of ownership became a nullity. Therefore, Bernheim's claim of ownership based upon June 5, 2000 stipulation is meritless as a matter of law, and Count 1 of the complaint is dismissed.[6]

### 2.    Remaining Claims are Time-Barred

Bernheim's remaining claims are time-barred.  All of Bernheim's remaining claims stem from his original allegations (made in the New Jersey Adversary Proceeding) that he has owned some or all of Elia Construction since 1987, and the Elias have committed various torts (including conversion and fraud) in failing to pay him profits and benefits due him by virtue of that ownership.  According to the complaint, all of these causes of action arose before or during the pendency of the New Jersey Adversary Proceeding.  Indeed, most (if not all) of Count 2

---

[6] That the June 5, 2000 Stipulation and Order was signed by Bankruptcy Judge William Gindin is of no consequence given later rulings that Judge Gindin lacked subject matter jurisdiction over the entire proceeding.  If Judge Gindin didn't have jurisdiction to enter that Stipulation and Order in the first place, the fact that he did so is irrelevant.

through 10 of the complaint were raised in the New Jersey Adversary Proceeding.[7]

To be clear, the issue in this case is not whether defendants wrongfully took possession of the Elia Chapter 11 surplus funds. The issue is whether plaintiff has a claim to those funds in the first place because he is an owner. The dispute over plaintiff's ownership accrued back in 1990, and he brought a timely claim, but did so in the wrong forum. By the time that the New Jersey bankruptcy court realized that it lacked jurisdiction over plaintiff's claims of ownership, conversion, fraud and the like, the statute of limitations for all of those claims had long since expired. At that juncture, the onus was upon Bernheim to timely refile his adversary proceeding in the proper forum. Had he done so, there would be no issue. See N.Y. C.P.L.R. § 205(a) (providing for a six-month period within which to commence any action that has been dismissed in any manner other than by voluntary discontinuance). The problem is that Bernheim waited almost four years after dismissal before taking *any* action.

He cannot argue that the Elia Chapter 11 precluded him for refiling because, as Bernheim well knew, Judge Kaplan had lifted the bankruptcy stay as

---

[7] See Compl. at ¶ 15 (stating that the "crux of the litigation [in New Jersey] involved claims concerning the ownership of Elia [Construction]; claims that plaintiff wrongfully had been deprived of benefits regarding [ownership of] Elia; claims that defendants wrongfully benefitted personally by diverting corporate assets to themselves; and claims for false/malicious prosecution.").

to those claims back in June 4, 1998.[8]  Because there was nothing to prevent

Bernheim from timely refiling his claims of ownership in the proper forum, his

failure to act for almost four years renders all of his claims untimely.


A.    **Equitable Tolling Inappropriate**

Bernheim argues that the doctrine of equitable tolling should apply.

Equitable tolling is a doctrine that permits courts to extend a statute of limitations

on a case-by-case basis to prevent inequity.  See Warren v. Garvin, 219 F.3d

111, 113 (2d Cir. 2000); Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir.1996). The

doctrine has been applied "as a matter of fairness" where a plaintiff has been

"prevented in some extraordinary way from exercising his rights, or [has] asserted

his rights in the wrong forum."  Johnson, 86 F.3d at 12 (quoting Miller v. Int'l Tel. &

Tel. Corp., 755 F.2d 20, 24 (2d Cir.), cert. denied, 474 U.S. 851 (1985)).

However, equitable tolling will not apply unless the party seeking to invoke the

doctrine has acted with reasonable diligence throughout the period he seeks to

have tolled.  Id.  See also Singletary v. Cont'l Ill. Nat'l Bank & Trust Co., 9 F.3d

1236, 1241 (7th Cir. 1993) (equitable tolling "permits a plaintiff to sue after the

---

[8]  Bernheim admits his awareness of that fact in the complaint.  See Compl. at ¶ ¶ 22-23 (acknowledging that Jude Kaplan found that "any internecine squabble over surplus in the estate of this Debtor is a matter of little concern to [the Bankruptcy] Court" and that Judge Kaplan "lifted the automatic stay so as to have 'full adjudication with respect to claims of ownership in the Debtor-corporation'" in another forum); id. at ¶ 26 (stating that on April 29, 1999, and again on May 19, 1999, Judge Kaplan "again made clear that he did not want to determine the dispute over ownership of Elia [Construction] and that he transferred [that claim] to New Jersey.").

statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before").   A party seeking to invoke the doctrine of equitable tolling bears the burden of establishing: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

The Court finds that plaintiff has failed to establish his entitlement to equitable tolling.  While it is unfortunate that it took the New Jersey bankruptcy court over 10 years to realize that it lacked subject matter jurisdiction, once that occurred, there was nothing to prevent plaintiff from refiling his claim in the appropriate forum.  For the reasons already discussed, the pendency of the Elia Chapter 11 does not excuse Bernheim's lack of diligence.  Nor does Bernheim's purported incompetence from September 1985 to November 1999 (see Compl., Dkt. No. 1, at ¶ 12) excuse his failure to refile timely as that period of incompetence ended well before the New Jersey Adversary Proceeding was dismissed in 2001.

Likewise, the pendency of Bernheim's motion to intervene in the Damon & Morey fee dispute provides no excuse.  Bernheim did not move to intervene in that action until August 2005, several months after this case was filed.  The issue here is Bernheim's failure to take action from May 2001 (when the New Jersey Adversary Proceeding was dismissed) until February 2005 (when this action was

filed).  Any actions taken after February 2005 have no bearing on the issue of timeliness.

**B.    Timeliness Issue is not Law of the Case**

Bernheim asserts that this Court cannot find his claim time-barred because both the Second Circuit and Judge Elfvin ruled that his filing in 2005 was premature and those rulings are now the law of the case.

The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. See United States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002).  The law of the case doctrine has two branches.  The first branch, the "mandate rule," requires a trial court to follow an appellate court's ruling on an issue in the same case.  Id.  The second "more flexible" branch, indicates that when a trial court has ruled on an issue, it should generally adhere to its own rulings in subsequent stages of the same case absent "cogent" or  "compelling" reasons not to, including an intervening change in law, availability of new evidence, or "the need to correct a clear error or prevent manifest injustice."  Id.; see also Johnson v. Holder, 564 F.3d 95 (2d Cir. 2009).

This Court does not agree with Bernheim's readings of Judge Elfvin's and the Second Circuit's rulings.  When Judge Elfvin dismissed this action in 2006, he did so because he was under the impression that other courts would be

addressing the issue of ownership first, and in *the interests of judicial economy*, it made no sense that he should also consider that very same issue. Judge Elfvin never addressed the issue of whether the action was untimely when filed, only whether it made sense for him to continue to preside over it in light of the pendency of other actions wherein he believed Bernheim's ownership interest would be resolved. Indeed, he explicitly indicated that the issue of ownership over Elia Construction *was ripe for adjudication*, but found that it might be more prudent to delay ruling on that issue until it was clear whether there would be a surplus in the Elia bankruptcy estate. (See Decision of Hon. John T. Elfvin dated January 10, 2006, Dkt. No. 26, at 3 ("Plaintiff makes various factual allegations in his Complaint, the relevant ones of which depend on the Final Report filed with the Bankruptcy Court. As such, all of plaintiff's claims except for that of declaratory judgment will not be ripe for adjudication until the Final Report is filed with the Bankruptcy Court.")). It makes no sense to say that a claim over ownership that was ripe for adjudication in 1990 when the action was filed in New Jersey, became premature in 2005. To the extent that Judge Elfvin did believe some of the claims to be unripe, this Court respectfully disagrees as it is clear that all of the pending claims accrued long before the New Jersey Adversary Proceeding was dismissed in 2001. Although the *value* of the surplus estate had yet to be determined, the conduct giving rise to Bernheim's ownership interest occurred over 20 years ago.

Certainly, if the Second Circuit had determined the issue of timeliness, this

Court would be bound by that determination under the mandate rule. However, the Second Circuit did not address the timeliness of Bernheim's claim for ownership and benefits. Instead, the Circuit merely affirmed that it was within Judge Elfvin's discretion to dismiss the matter without prejudice *in the interests of judicial economy*, so as to allow "Bernheim's status as a shareholder to be resolved by the Court which had first occasion to consider it." (See Mandate of Second Circuit, Dkt. No. 35, at 2).

In sum, the law of the case doctrine does not preclude this Court's determination that Bernheim's claim of ownership (stemming from the 1987 transaction) is untimely.

## **CONCLUSION**

For the reasons stated, this Court declines to adopt the report and recommendation of Magistrate Judge Schroeder, finds that Count 1 of the complaint must be dismissed as a matter of law, and finds that Counts 2 through 10 of the complaint are untimely. Accordingly, the motion to dismiss is granted and the complaint is dismissed in its entirety. The Clerk of the Court is directed to close this case and to terminate all outstanding motions.

SO ORDERED.

s/ Richard J. Arcara
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: February 25, 2010